IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 22–cv–01628–MDB

S.V.L.,

    Plaintiff,

v.

KILOLO KUAKAZI, Acting Commissioner of Social Security,

    Defendant.

## ORDER

Plaintiff S.V.L.[1] ["Plaintiff"] brings this action pursuant to the Social Security Act, 42 U.S.C. 405(g) seeking judicial review of a final decision by Defendant Kilolo Kuakazi, Acting Commissioner of the Social Security Administration ["Commissioner"], denying her application for supplemental security income. (Doc. No. 1.) Plaintiff has filed an Opening Brief, the Commissioner has responded, and Plaintiff has replied. (["Opening Brief"], Doc. No. 11; ["Response"], Doc. No. 12; ["Reply"], Doc. No. 13.) The Commissioner has also filed the Administrative Record. (["AR"], Doc. No. 8.) After carefully analyzing the briefs, the Administrative Record, and relevant law the Court **REVERSES** and **REMANDS** for further proceedings.

## BACKGROUND

---

[1] Pursuant to Local Rule, D.C.COLO.LAPR 5.2(b), Plaintiff S.L. is identified by her initials only.

I.      **Procedural Posture**

Plaintiff filed her original application for supplemental security income ("SSI") on April 1, 2014. (AR 103.) That application was denied by the ALJ on July 12, 2016. (AR 100–13.) Rather than appeal the decision, Plaintiff filed a new SSI application, which is the application now before the Court, on July 27, 2016. (AR 1249.)

Plaintiff's pending SSI application was initially denied by the ALJ on November 2, 2018. (AR 15–32.) However, on August 18, 2020, the Honorable Reid Neureiter remanded the action for further proceedings, finding the ALJ did not "give consideration to all the medical opinions in the record." (AR 1357 (citing *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012)).) After remand, the ALJ held an additional hearing on July 27, 2021. (AR 1275–1307.) Subsequently, on August 13, 2021, the ALJ issued a new decision, again denying Plaintiff's application. (AR 1248–62.) On May 24, 2022, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (AR 1238–41.) Following that notice, Plaintiff filed the instant appeal. (Doc. No. 1.)

II.     **Relevant Facts**

Plaintiff was born on September 7, 1986; she was twenty-nine years old on the alleged disability onset date (July 13, 2016). (AR 1261, 1397, 1470.) Plaintiff has a high school education and took multiple years of college courses but did not complete her degree. (AR 55–57.) Her employment history includes positions as a cashier and customer service representative, but she has not worked since 2007. (*Id.*; AR 316–324.)

In conducting his analysis, the ALJ stated he was declining to review evidence produced prior to July 12, 2016, the date of the final and "binding" denial of Plaintiff's original SSI

application. (AR 1249 ("The undersigned does not find any reason to revise the prior determination and, thus, declines to reopen the prior determination").) The ALJ considered "only the un-adjudicated period beginning July 13, 2016, and extending through the date of [the] decision." (*Id.*) The ALJ did not conduct any "analysis … to … any opinion evidence offered during the period not under adjudication[.]" (*Id.*) The ALJ further said, "any reference made to earlier evidence is simply for the purpose of discussing the history of the case and should not be interpreted as a reopening of a previously adjudicated period." (*Id.*)

At the first step of the Commissioner's five-step sequence for making determinations,[2] the ALJ found that Plaintiff has not engaged in substantial gainful activity since the date of her application, July 27, 2016. At the second step, the ALJ found that Plaintiff lives with the following "severe impairments": "diabetes mellitus; diabetic neuropathy of the bilateral feet; obesity; diabetic retinopathy under control; status-post cataract excision and lens implant left eye; asthma-controlled with medication; chronic kidney disease, stage III; migraine headaches; depressive disorder; generalized anxiety disorder; and post-traumatic stress disorder (PTSD)." (AR 1251.) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the regulations. (AR 1252–54.)

---

[2] The Social Security Administration uses a five-step sequential process for reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.) The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax* v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

Because the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets the severity of the listed impairments, he was required to determine Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except lift and/or carry up to 10 pounds occasionally and less than 10 pounds frequently. The claimant can sit for approximately six hours in an eight-hour workday and stand and/or walk for approximately two hours in an eight-hour workday. She requires the ability to sit or stand alternatively at will to accommodate the need to change from a standing position into a sitting position or vice versa approximately two times an hour provided she is off-task less than five percent of the work period. The claimant can only occasionally climb ramps or stairs, never climb ladders, ropes, and scaffolds and occasionally stoop, crouch, kneel, and crawl. She should only occasionally balance as a part of the job requirements. The claimant can reach overhead and other directions such as lateral or forward bilaterally on a frequent basis. She can handle, finger, and feel bilaterally on a frequent basis. The claimant should have only occasionally exposure to fumes, odors, and/or irritants. She should never work around unprotected heights or moving or dangerous machinery and never be required to drive as part of her job requirements. The claimant must be allowed to elevate legs to foot stool height, defined as a height that would not interfere with workstation, whenever sitting; however, she should be able to elevate her legs at waist level during normal breaks and lunch or dinner breaks. The claimant requires that use of a cane for ambulation. Additionally, the claimant is limited to work that consists of simple, routine, and repetitive tasks. The claimant can have occasional contact with public, co-workers, and supervisors.

(AR 1254–55.)

At step four, the ALJ found that Plaintiff had no past relevant work to which she could return. (AR 1261.) Finally, at step five, the ALJ concluded that, considering her age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy. (*Id.*) Based on the testimony of a vocational expert, the ALJ identified document preparer, tube operator, and mail clerk as occupations Plaintiff could perform in light of her RFC. (AR 1261–62.) Accordingly, Plaintiff was deemed not to have been disabled from

4

July 27, 2016, the date the application was filed, through August 13, 2021, the date of the ALJ's decision. (AR 1262.)

## STANDARD OF REVIEW

In social security disability cases, the court's review is limited to determining whether: (1) substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner's decision comports with relevant legal standards. *Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017); *see generally* 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted); *accord Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."). Any conflict in the evidence is to be resolved by the ALJ, and not the court. *See Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000) ("We will not reweigh the evidence."). A finding of "no substantial evidence" is proper only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Further, "if the ALJ failed to apply the correct legal test, there is ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## ANALYSIS

Plaintiff makes three different arguments on appeal. First, Plaintiff contends the ALJ failed to properly consider the opinions of endocrinologist Dr. Vickie Chiong when conducting the RFC analysis, because: 1) the ALJ did not determine whether Dr. Chiong was a "treating

5

physician" of Plaintiff under 20 C.F.R. § 416.927, and because he did not correctly weigh her opinion.[3] (Doc. No. 11 at 4–9.) Second, Plaintiff contends the ALJ failed to properly consider the opinions of state agency psychologist Dr. Robert Brill—who opined that Plaintiff suffers from various "moderate" mental limitations—when the ALJ found Plaintiff's RFC allowed her to perform work "that consists of simple, routine, and repetitive tasks" with "occasional contact with public, co-workers, and supervisors." (*Id.* at 10–16; AR 1255.) And third, Plaintiff argues the ALJ erred at step five because the document preparer occupation identified by the ALJ requires functioning that is inconsistent with the ALJ's RFC finding. (*Id.* at 9–10.)

**I.    Dr. Chiong's Opinion**

Plaintiff first contends the ALJ failed to properly asses the opinions of endocrinologist Dr. Vickie Chiong.

In June 2016, Dr. Chiong completed a "Physical Medical Source Statement" regarding Plaintiff. (AR 747–50.) In her statement, Dr. Chiong checked boxes opining that Plaintiff could "sit" and "stand/walk" "less than 2 hours ... cumulatively over the course of an 8-hour working day, (with normal breaks), 5 days per week." (AR 748.) On the same form, when asked what Plaintiff "need[ed] to be doing for the rest of the [eight hour workday]," Dr. Chiong opined that Plaintiff should be "resting her feet." (*Id.*) Additionally, Dr. Chiong marked "no" when asked whether Plaintiff "need[ed] to recline, elevate [her] legs ... or otherwise lie down during a typical

---

[3] As pointed out by both parties, "[o]n March 27, 2017, new Social Security regulations went into effect abolishing the "treating physician" rule, rescinding several rulings (SSR 96-2p, 96-5p, 96-6p); eliminating the requirement that ALJs must "weigh" each medical opinion; and clarifying that the ALJ need discuss only those regulatory factors that are relevant to their decision. 82 FR 5844-84 (Jan. 18, 2017) (effective date March 27, 2017). These regulations, however, are prospective and do not apply to this case because Plaintiff filed her SSI claim before March 27, 2017." (Doc. No. 12 at 10 n. 3.)

6

8 hour period." (*Id.*) Dr. Chiong also stated that Plaintiff needed to be able to take a fifteen minute break every four hours while working. (*Id.*)

The ALJ gave "little weight" to this opinion, finding "Dr. Chiong's opinion was a check-box type form that cited no specific objective medical findings, and provided no narrative explanation for the extreme limitations assessed." (AR 1260.) The ALJ further found Dr. Chiong's opinion "[in]consistent with the overall record," saying, "Dr. Chiong's notes from her February, May, July, November and December 2016 and March 2017 appointments with the claimant reflect relatively mild examination findings." (*Id.* (citing AR 902, 905, 908, 911–12, 914–15, 918).) The ALJ also noted that the assertion Plaintiff could only cumulatively sit for two hours per day was undercut by Dr. Chiong's assessment *on the same form* that Plaintiff would need to "rest her feet" the other six hours of the work day, because Dr. Chiong "gave no indication as to how resting [Plaintiff's] feet was inconsistent with sitting longer than [two hours per day]." (AR 1260 (citing AR 748).)

Plaintiff argues the ALJ failed to "weigh" Dr. Chiong's opinion as a "treating physician" opinion pursuant to 20 C.F.R. § 416.927(c). (Doc. No. 11 at 4–6; *see id.* at 6 ("[The ALJ] could not have properly weighed Dr. Chiong's opinions … without determining whether she was a treating physician.").) In response, the Commissioner argues: 1) the ALJ was not required to assess an opinion pursuant to 20 C.F.R. § 416.927(c) when that opinion was given prior to the relevant adjudicatory period,[4] and 2) even if Dr. Chiong's opinion was from the relevant adjudicatory period, the ALJ's failure to specifically reference a "treating physician" analysis

---

[4] Dr. Chiong's opinion was issued in June 2016, prior to the adjudicatory period in question, which began July 13, 2016.

was a harmless error as "it is apparent from the decision that the ALJ did not give Dr. Chiong's opinion controlling weight and he explained why he gave it little weight." (Doc. No. 11 at 10–12.) In her Reply, Plaintiff argues that evidence from a prior SSI claim is relevant to a new claim, and even if the ALJ implicitly declined to give Dr. Chiong's opinion "controlling weight," his failure to analyze whether Dr. Chiong was a treating physician "prevented the ALJ from giving appropriate deference" to Dr. Chiong's opinion. (Doc. No. 13 at 1–3.)

**A. The ALJ properly considered Dr. Chiong's opinion.**

The Commissioner argues that, assuming the ALJ was required to consider Dr. Chiong's opinion,[5] his analysis was sufficient to avoid remand. The Court agrees.

It is well-settled that an ALJ has a duty to evaluate all medical source opinions in the record. *Vigil v. Colvin*, 805 F.3d 1199, 1201–02 (10th Cir. 2015) (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012)). Under the governing regulations (*see supra* n. 3), "[t]he weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)). Generally, medical opinions from treating sources are given "more weight" than those from non-treating sources. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); *see Hamlin*, 365 F.3d at 1215 ("The treating physician's opinion is given particular weight because of his [or her] unique perspective to the medical evidence that cannot

---

[5] The Commissioner also makes a threshold argument that the ALJ was not required to analyze Dr. Chiong's June 2016 opinion because the opinion came before the relevant adjudicatory period. However, because the Court finds that the ALJ adequately considered the substance of Dr. Chiong's opinion, it declines to address the Commissioner's threshold argument.

be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.").

In relevant part, under 20 C.F.R. § 416.927(a)(2), a "treating physician" is a

> medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]. Generally, we will consider that [the claimant] ha[s] an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that [the claimant] see[s], or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimants] medical condition(s). We may consider an acceptable medical source who has treated or evaluated [the claimant] only a few times or only after long intervals (e.g., twice a year) to be [the claimants] treating source if the nature and frequency of the treatment or evaluation is typical for [the claimants] condition(s).

If a medical provider is deemed a "treating physician," pursuant to Tenth Circuit "case law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling ... the ALJ must complete a sequential two-step inquiry[.]" *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ must determine whether the "treating physician's medical opinion ... is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Id.* "[A]n opinion must be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record." *Id.* (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.*  However, a finding of non-controlling weight does not mean the opinion should be necessarily rejected. *Id.* "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Id.* Those factors include:

9

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301 (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). "Although the ALJ must consider each factor in weighing a medical opinion, [he] is **not** required to engage in an explicit factor-by-factor analysis, so long as [his] written decision is 'sufficiently specific to make clear to any subsequent reviewers that weight the adjudicator gave to the [ ] opinion and the reason for that weight.'" *Lopez v. Kijakazi*, No. 20-CV-02498-NYW, 2022 WL 950434, at *6 (D. Colo. Mar. 29, 2022) (emphasis added) (quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007)).

Here, it appears Dr. Chiong was a treating physician of Plaintiff. As the ALJ noted, Dr. Chiong had several appointments for treatment with Plaintiff in 2016 and 2017. (AR 1260; *see* AR 902, 905, 908, 911–12, 914–15, 918.) Indeed, the Commissioner does not appear to dispute that Dr. Chiong was a treating physician of Plaintiff. (*See* Doc. No. 12 at 10–12.)

The ALJ did not explicitly label Dr. Chiong a "treating physician," nor did he conduct an explicit controlling weight analysis. (*See* AR 1260.) But that does not require remand. In similar circumstances, the Tenth Circuit has held that even when an ALJ does not explicitly address the matter of "controlling weight," so long as the ALJ "unambiguously demonstrates that he declined to give [an] opinion[] controlling weight," the matter should not be remanded so long as the ALJ had "substantial evidence to support that decision." *Tarpley v. Colvin*, 601 F. App'x 641, 643–44 (10th Cir. 2015); *see id.* (distinguishing *Tarpley* from *Krauser* (638 F.3d 1324),

because *Krauser* "involved an ALJ who determined that a treating physician's opinion was not entitled to controlling weight but then neglected to decide whether it was entitled to at least some weight," and saying "[h]ere the situation is reversed—the ALJ didn't expressly say he wasn't affording the opinions controlling weight but did adequately explain why they were entitled to no weight and did so in a manner entitled to our deference"). In other words, the Court does not woodenly review the ALJ's decision for the phrases "treating physician" or "controlling weight," but rather holistically considers whether the ALJ sufficiently considered the expert's opinion and a came to a decision supported by substantial evidence. *See Id.* at 643 ("Ms. Tarpley argues that the ALJ erred in rejecting her treating physicians' views. But we must affirm an ALJ's decision if substantial evidence—'more than a scintilla, but less than a preponderance'—exists to support it." (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir.2007)).)

This case is similar to *Tarpley*, where the Tenth court affirmed the ALJ's decision. Like in *Tarpley*, the ALJ in this case did not explicitly conduct a treating physician analysis of Dr. Chiong, but he did unambiguously determine that Dr. Chiong's opinion should be given "little weight." (AR 1260); *see Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) ("Because we can tell from the decision that the ALJ declined to give controlling weight to Dr. Chorley's opinion, we will not reverse on this ground.") The ALJ's decision was supported by the evidence. (*Id.*)

For example, the ALJ found that Dr. Chiong's check-box form[6] was internally contradictory and inconsistent. The boxes checked by Dr. Chiong opine that Plaintiff cannot sit

---

[6] A check-box medical form "cannot be discounted merely because it was a check-box form," but that is not what the ALJ did here. *See Bonilla v. Colvin*, No. 12-cv-02182-WYD, 2013 WL 5379881, at *4 (D. Colo. Sept. 26, 2013) (citing *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008)).

11

for more than two hours cumulatively during a workday, but also that Plaintiff should "rest[ ]" her feet during the remainder of an eight hour workday and that Plaintiff does not need to "recline" or "elevate [her] legs ... during a typical 8 hour period." (AR 784.) The form also says Plaintiff requires a fifteen-minute break every four hours "during a working day." (*Id.*) The assertion that Plaintiff cannot sit more than two hours during an eight hour workday does not square with the assertion that Plaintiff must "rest [ ] her feet" the other six hours, particularly when Dr. Chiong specifically declined to opine that Plaintiff needed to elevate her legs or lie down during the workday. (*Id.*) Likewise, the assertion that Plaintiff requires a break from work every four hours does not square with the assertion Plaintiff can only sit for two hours per day. (*Id.*) Based on these considerations alone, the ALJ's decision as to Dr. Chiong's opinion, was well supported. (AR 1260.)

Additionally, as noted by the ALJ, Dr. Chiong's fairly mild treatment notes are inconsistent with the strict contention that Plaintiff cannot even sit for more than two hours per day. (AR 1260 (citing AR 902, 905, 908, 911–12, 914–15, 918).) For example, Dr. Chiong's notes regularly demonstrate that she counseled Plaintiff to exercise—including a May 2016 note stating Plaintiff was "encourage[d] to perform physical activity ... at least 150 min[utes]" per week, and a March 2017 note stating that Plaintiff was "encouraged to walk daily." (AR 902, 915.) Further, the Court agrees with the ALJ's conclusion that Dr. Chiong's treatment notes do not generally indicate symptoms that would reasonably require a person to lay down for 20–22 hours per day. (*See* AR 901–19); *see e.g.*, *Young v. Barnhart*, 146 F. App'x 952, 955 (10th Cir. 2005) (upholding ALJ's determination that treating physician's opinion was "not substantiated by the clinical and diagnostic findings reflected in her treatment records").

Accordingly, the Court declines to remand on the basis that the ALJ failed to properly consider Dr. Chiong's opinion.

## II.   Dr. Brill's Opinion

Plaintiff next contends that the ALJ failed to properly consider the opinion of state agency psychologist Dr. Robert Brill. On this argument, the Court agrees.

On August 20, 2018, Dr. Brill completed a Mental Health Residual Functional Capacity Assessment ("MRFCA") of Plaintiff. (AR 1223–26.) As relevant to this appeal, in the assessment's "Summary Conclusions" (also known as "Section I"), Dr. Brill found Plaintiff has "moderate limitations" in her "ability to carry out detailed instructions," "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," and "ability to respond appropriately to changes in the work setting." (AR 1223–24.) Later, in his "Functional Capacity Assessment" of Plaintiff (also known as "Section III"), Dr. Brill found that Plaintiff's "objective mental status evaluation shows the ... residual functional capacity consistent with simple basic work-activities that can be learned in up to one month; [Plaintiff] will need a setting with reduced contact with supervisors, coworkers, and the public." (AR 1226.) Section III did not explicitly reference the "moderate limitations" Dr. Brill identified in Section I. (AR 1225–26.)

In his decision, the ALJ gave "significant weight" to Dr. Brill's opinion. (AR 1259.) The ALJ adopted Dr. Brill's Section III assessment that Plaintiff could perform "simple basic work-activities that could be learned in up to one month" and that Plaintiff would require "reduced contact with supervisors, coworkers, and the public." (*Id.*) The ALJ further stated that this

13

"opinion was supported by the medical record, which showed the claimant often had normal mental status findings throughout the medical record. (*Id.* (citing AR 762, 792–96, 798, 811, 839, 866, 876, 881, 902, 1074, 1567, 1623, 1626, 1680–85, 1688, 2105–10, 2111–15, 2137, 2154, 2156–60).) The ALJ did not explicitly note the "moderate limitations" identified in Section I of Dr. Brill's report. (*Id.*)

Plaintiff contends her RFC is incompatible with Dr. Brill's Section I conclusions, requiring remand. (Doc. No. 11 at 10–16.) In response, the Commissioner argues that the Section I portion of the assessment "does not constitute Dr. Brill's actual opinion about Plaintiff's workplace functioning." (Doc. No. 12 at 12.) Instead—the Commissioner argues—Dr. Brill's actual opinion of Plaintiff's functioning is in Section III, and that is the section upon which the ALJ correctly relied. The Commissioner further argues that Dr. Brill's Section I conclusions are consistent with his Section III analysis, and by extension, the ALJ's assessment of Plaintiff's RFC.

"[T]he Social Security Administration's Program Operations Manual System (POMS) characterizes [S]ection I as 'merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation [that] does not constitute the RFC assessment.'" *Fannin v. Commissioner, SSA*, 857 F. App'x 445, 447 (10th Cir. 2021) (quoting SSA POMS DI24510.060 (bolding omitted)); *see Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015) ("The POMS provides that Section III of the MRFCA, not Section I, is for recording a medical consultant's formal mental RFC assessment, and indicates that adjudicators are to use the Section III narrative as the RFC assessment."). Further, "[c]hallenges to whether an ALJ assessment of residual functional capacity incorporate limitations in section I ask 'the wrong

14

question.... We compare the administrative law judge's findings to [the doctor's] opinion [in Section III], not [the doctor's] notations of moderate limitations." *Id.* at 447–48 (quoting *Smith v. Colvin*, 821 F.3d 1264, 1269 n.2 (10th Cir. 2016)).

However, "[t]his does not mean ... that the ALJ should turn a blind eye to any moderate limitations enumerated in Section I that are not adequately explained in Section III." *Lee*, 631 F. App'x at 541. "Section III is for 'explaining the conclusions indicated in [S]ection I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings.'" *Id.* (quoting POMS DI 24510.060 B.4.a). "[I]f a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding. *Carver v. Colvin*, 600 F. App'x. 616, 619 (10th Cir. 2015).

Accordingly, the Court must review whether Dr. Brill's Section III assessment—that Plaintiff could complete "simple basic work-activities that can be learned in up to one month... [in] a setting with reduced contact with supervisors, coworkers, and the public"—adequately accounted for, and is not contrary to, the "moderate limitations" Dr. Brill identified in Section I. (AR 1223–24, 1226.)

The Tenth Circuit has "generally held that restricting a claimant to particular work activities does not adequately account for the claimant's mental limitations." *Parker v. Commissioner*, 772 F. App'x. 613, 616 (10th Cir. 2019) (citing *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012)); *see also Groberg v. Astrue*, 505 F. App'x. 763, 770 (10th Cir. 2012) ("A limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a

claimant's mental impairments."). Indeed, a "claimant's functional ability is distinct from the skill level required to perform a particular job." *Valdez v. Saul*, No. 17-cv-02610-PAB, 2020 WL 2832372, at *4 (D. Colo. June 1, 2020). "Because [an individual's] response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job." SSR 85-15, 1985 WL 56857, at *6 (SSA 1985). Thus, an ALJ generally must account for moderate limitations "with precision in the ultimate determination of the claimant's residual functional capacity," and must express the claimant's moderate impairments in mental functioning "in terms of work-related functions" or "work-related activities." *Warren v. Colvin*, 170 F. Supp. 3d 1360, 1364-65 (D. Colo. 2016) (emphasis added) (quotation and alteration marks omitted) (citing *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014)). Only if "the connection (between the limitation and the work) is obvious" may an ALJ "account for mental limitations by limiting the claimant to particular kinds of work." *Parker*, 772 F. App'x at 616; *see Smith*, 821 F.3d at 1269 (stating that in some instances "an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity").

Here, the Court finds that Plaintiff's moderate limitations in her "ability to carry out detailed instructions" and her "ability to respond appropriately to changes in the work setting," were sufficiently captured by Dr. Brills' Section III RFC opinion. (AR 1223–24.) Put simply, there is an "obvious" enough connection between limiting Plaintiff to "simple basic work-activities that can be learned in up to one month" and are conducted in "a setting with reduced

contact with supervisors, coworkers, and the public," and these moderate limitations. (AR 1226; 1259); *Parker*, 772 F. App'x at 616.

However, Dr. Brills' Section III findings do not seem to account for his Section I notes regarding Plaintiff's moderate limitation in "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (AR 1224.) In *D.G. v. Kijakazi*, a case recently decided in this District, the court considered a similar question as is presented here. 21-cv-01655-NYW, 2022 WL 2666033 (D. Colo. July 11, 2022). In *D.G.*, the claimant was found, among other things,[7] to have a moderate limitation in the ability to complete a normal workday and workweek and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* at *6. Based on the claimant's mental limitations, the ALJ's RFC assessment stated the claimant "can perform simple, routine tasks; and can have occasional superficial contact with the general public and coworkers." *Id.* at *10. On appeal, however, the Court rejected this RFC formulation, finding that, "[b]ecause the connection between the moderate limitations and the assignment of 'simple, routine tasks' is not obvious, the mere limitation to simple work is insufficient, alone, to account for D.G.'s moderate limitations." *Id.* at *10 (internal citation omitted) (citing, e.g, *Edgell v. Kijakazi*, No. CV 21-269 KK, 2022 WL 1987846, at *2 (D.N.M. June 6, 2022) (concluding that the connection between "simple tasks for two hours at a time without requiring redirection to task" and the claimant's "impaired ability to complete a normal workday and workweek without interruptions ... and

---

[7] In *D.G.*, the plaintiff also had a moderate limitation in "the ability to maintain attention and concentration for extended periods" and "the ability to work in coordination with or in proximity to others without being distracted by them." 2022 WL 2666033, at *6.

perform at a consistent pace without an unreasonable number and length of rest periods [was] not clear"); *Bosse v. Saul*, No. 2:18-cv-00475-LF, 2019 WL 3986046 (D.N.M. Aug. 23, 2019) (concluding that an RFC limiting the claimant to "simple, routine, and repetitive tasks" failed to account for the claimant's moderate limitations in completing a normal workday and workweek and performing at a consistent pace); *Peterson v. Saul*, 19-cv-486, 2020 WL 1911567, at *12 (D.N.M. Apr. 20, 2020) (finding a restriction to simple, routine tasks did not sufficiently account for moderate limitation in ability to complete normal workday and workweek without interruptions and perform at consistent pace without an unreasonable number and length of rest periods).

Even more recently, in *C.B. v. Kijakazi*, another court in this District came to the same conclusion, finding that even though an "RFC's limitation to work which entails routine, repetitive tasks and simple decision-making appears to address," some of the plaintiff's moderate mental limitations,

> the connection between these limitations and an impaired ability ... to complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods is not clear. "And, absent an adequate explanation from the ALJ on this point, it would be inappropriate for the Court to speculate about what that connection might be."

2023 WL 5310119, at *4 (D. Colo. Aug. 16, 2023) (quoting *Edgell*, 2022 WL 1987846, at *7).

The Court finds *D.G.* and *C.B.* persuasive. Merely limiting Plaintiff to "simple basic work-activities that can be learned in up to one month" does not appear to adequately address a moderate limitation in her ability to "complete a normal workday and workweek" or "perform at

18

a consistent pace without an unreasonable number and length of rest periods."[8] Put another way, the link between the skill level required by a job (i.e. whether the job is made up of "simple" or "basic" tasks) is not clearly connected to whether or not a claimant can actually make it through the workday or week, nor whether she will require an unreasonable number of rest periods due to interruptions from psychological symptoms. In short, Dr. Brill's Section III analysis does not adequately explain his Section I conclusions and thus the ALJ cannot simply adopt the Section III formulation. *Id.* at \*5 ("When an ALJ does not account for a medical source's assessed functional limitations by limiting the claimant to particular kinds of work activity, but instead assigns an RFC that contradicts the medical source opinion, the ALJ must explain why [he] did not account for the medical opinion in her RFC determination."); *Givens v. Astrue*, 251 F. App'x 561, 568 (10th Cir. 2007) ("If the ALJ rejects any significantly probative medical evidence concerning [a claimant's] RFC, he must provide adequate reasons for his decision to reject that evidence.")). *Edgell*, 2022 WL 1987846, at \*9 (D.N.M. June 6, 2022) ("Where the ALJ does not adequately explain her rejection of a medical source opinion concerning the claimant's RFC, the case must be remanded for the ALJ to do so." (citing *Haga v. Astrue*, 482 F.3d 1205, 1208–09 (10th Cir. 2007*)*; *Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (10th Cir. 2007); *Givens*, 251 F. App'x at 568.)).

      The Court finds the ALJ's failure to incorporate or discuss the findings of moderate limitation in Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without

---

[8] Likewise, the Court sees no reason why limiting the number of people Plaintiff has to engage with during a hypothetical workday would address this limitation either.

an unreasonable number and length of rest periods constitutes reversible error, and the case must be remanded for the ALJ to provide the required explanation or account for the limitations in the RFC.

### III. The ALJ's Analysis at Step Five

As noted above, Plaintiff argues the ALJ erred at step five because the occupation identified by the ALJ requires functioning that is inconsistent with the ALJ's RFC finding. But the five-step analysis is sequential, and the determination at step five depends, in part, on the ALJ's determinations in prior steps. Thus, the Court declines to pass on this argument, which "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

## CONCLUSION

For the reasons set forth above, the Commissioner's decision is **REVERSED** and **REMANDED** for additional proceedings consistent with this opinion.

Dated this 27th day of September, 2023.

BY THE COURT:

_____
Maritza Dominguez Braswell
United States Magistrate Judge